Step up and let me just get your names and we'll go from there. Assistant Attorney General Carl Ehlertz, Your Honor, for the Attorney General's Office. Morning, Your Honors. Kirk Jenkins representing AU Optronics America. You basically know our procedure and we're kind of lax in the sense that we let you go beyond but not forever. So I'll make your points and move on. May it please the Court. Can I speak up because those microphones are not microphones for the audience. They're microphones, I guess, for us to hear. We still haven't figured out why they even have them anymore. They don't work very well. Assistant Attorney General Carl Ehlertz, for the Attorney General's Office, Your Honors. At issue is Section 7.2 of the Illinois Antitrust Act. The Act provides that the Attorney General may subpoena documents from those that have possession, custody, or control of them pursuant to her investigation of either a civil or a criminal violation of the Act. Section 7.2 was intended by the General Assembly, Your Honors, to give the Attorney General very broad powers to obtain documents in her investigative function. There's nothing to suggest that the subpoenas that were issued by the Attorney General in this case should have been quashed by the trial court. The case should be reversed regardless of whether Your Honors apply a de novo or an abuse of discretion standard. How do you get around that the U.S. Court elsewhere ruled that these were untouchable, basically? And even taking into the White case? Well, Your Honors, I don't think there's any precedent for saying that these documents are untouchable. In fact, I think it's exactly the opposite. The case law suggests, for example, in the federal litigation involving the Justice Department, that these documents are actually subject to subpoena as a per se rule in the Ninth Circuit. That was what came out of the appeals process there into the Ninth Circuit. And then my opponents filed, or a White case filed a cert petition in the U.S. Supreme Court, which was denied. So at least in the Ninth Circuit, where this case arises from, there's no doubt that a lawful subpoena will trump the protective order that my opponents rely on. So the question really comes down to whether this is a lawful subpoena and the powers of the Attorney General under Section 7.2. At least that's my contention. And as I said, there's nothing in the federal protective order here that would suggest the trial court's interpretation was correct. The purposes of the protective order are set out in Section 1 of the protective order, which is attached as an exhibit in my appendix. And the provisions of that document are designed to assure that the federal litigation does not subject the companies who tender documents to the court, causes those companies that tender documents to have those documents that might contain trade secrets or other, in the terms of the protective order, competitively sensitive information from being disclosed, either to each other or to the public, because that would put their businesses at a competitive disadvantage. That concern is simply not at stake when the Attorney General seeks to review those documents for the decision of whether to file an enforcement action. Now, the circuit court relied on Comity, and it's been raised as an argument as to why this court should affirm the trial court. But this court should quickly dispose of any suggestion that Comity to the district court's protective order should affirm, should cause the court to affirm the quashing of the subpoena. The Ninth Circuit's recent decision in White and Case makes clear that Section 8 of the protective order trumps any concerns regarding. That was fed on fed. That was the federal analysis. Fed versus state court. So, therefore, there's a distinction there. But the law, I think, is exactly the same in the federal courts, at least with regard to the question of possession, custody, or control. So, the federal courts have done the analysis and come to the conclusion that these documents, simply because they're brought into California, then become a subject to the Justice Department's jurisdictional reach. There's no question that AU America is within the jurisdictional reach of the Attorney General's office, and our demand is to AU America to turn over the documents that they possess, or at least that their lawyers possess. So. Wouldn't it violate the protective order, though? Do they really have custody if the order provides that the outside counsel or their counsel shall not share those documents with them? Yes, Your Honor. It's my contention that it does. The question is not custody. The question is control, again. If they had custody, then sure, that would trigger. Wouldn't they even have control under those circumstances? Wouldn't that put the counsels in a position of having to violate a federal court order to turn those over? Certainly not pursuant to federal law, because their clients are subject to the subpoena that we have authorized. But as it relates to the protective order? The protective order doesn't control at all if the subpoena that was issued by the Attorney General's office in this case is considered a lawful state subpoena, which I'm urging your court should find. It is a lawful state subpoena, because we have jurisdiction over AU America, and AU America has control of these documents. They have control because even under the protective agreement, they're a receiving party of these documents. They're defined that way, as a receiving party. They have to store these documents. That's their obligation, not the obligation of their lawyers. Now they can ask their lawyers to do it, but it's their obligation. They have to maintain them. They have to limit access to these documents. That's under Section 7 of the protective order. They are able to show these documents to experts and other outside counsel. They can rely on the judgment of those people when they litigate. And they must, in the end, destroy this material. That's not an obligation of their attorneys. That's their obligation. All of these things give them such connection to these documents as would suggest that they have control of them. And if they have control of them, I think the logical flow is that they have an obligation to turn them over to the Attorney General. So you would let a state court supersede a federal court on sealed documents? You would not require the entity, such as you, to go back before the federal court to try to get them unsealed? Sealing issue was raised by the parties below, Your Honor. It was not a basis for the circuit court's decision. The parties on appeal have argued that Your Honor should adopt that argument. They can certainly do it. It's nice to be an appellee. You can raise any argument you want to affirm the judgment. I don't have that benefit. But the argument is meritless, rather. The order sealing the documents is an order by the court to its clerk, not to release the documents to the public or to anyone else. And we're not seeking that those documents be released to the public or even to us. Those sealed documents should stay sealed in the district court out in California. We're asking one of the parties that has them in their possession to turn them over directly to us. So the sealing order doesn't really apply at all. That's the argument that we made below in the trial court. And I think that's the argument, the court didn't say it was adopting that, but I think that's the argument that the court gave merit to and didn't rely on the seal as a basis for prohibiting us from seeking these documents through AU. The federal government was able to get these documents and the documents remained sealed. So obviously, at least there's some disconnect there if that's the argument that the appellees want to make. There's a trio of Illinois cases that go to control, Your Honors, that I think should have your attention. Hawkins, Franzen, and Drelle. In Hawkins, there were tax records that were at issue. The party who was asked to produce the tax records said, you know, I just don't have them. Maybe my ex-wife has them. I'm not sure. It's not my fault if I don't have them that I don't turn them over. And the court said, no, you have a statutory right to get these documents from the government. The request for documents, therefore, makes it within your power to produce them and therefore you should be required to produce them. In Franzen, there were architecture plans, a former architect. They weren't his current architect. Again, the court looked at the issue and said, you know, if it was your former architect, you can go back and ask your former architect to produce the plans. They're within your power to produce and therefore we think it's fair for you to have to produce them. Franzen is interesting because at one point the court says that the question of whether to issue a subpoena against the owner or against a third party, thus ordinarily is in such a situation merely one of procedural choice and convenience. So we've been, you know, the argument has been made that we should have gone after perhaps the attorneys here as opposed to AU America. But it's really not a question of, it's a question of power. And both the attorneys have the power to produce it and the clients have the power to produce it. And if the subpoena is lawfully issued against the client, then that shouldn't stop the court from finding that there's the control necessary for the court to order the subpoena be enforced. Torelli, which is an Illinois Supreme Court case from the early 70s, talks about what happens if we don't follow that rule, that it's practical power that matters, not physical possession, for example. If it's not a practical rule, what happens is parties can say, well, I'm leaving one attorney to be in charge of this and another attorney that. My accountant has those records. And they don't know what's going on with each other. And if you don't serve the right party, I guess you're just going to have to go without the information. In that case, the litigant had two lawyers. And one lawyer didn't have the information that the plaintiff was trying to get. The plaintiff went after the litigant. The litigant's attorney said, we didn't know. That's why we didn't turn over the information. And the court said, no, the subpoena, or actually that was a discovery request. The discovery request wasn't directed to the attorneys. It was directed to you. If your attorneys had the information, it was incumbent upon you to provide that. So as a matter of comity, as a matter of control, there are really no bases here for the court to obstruct the subpoena. And we'd ask that the court find that the decision to quash the subpoena was error and remand the case for enforcement. Thank you. Thank you. Good morning again, Your Honors. My name is Kirk Jenkins, and I represent the appellee, AU Optronics Corporation America. Your Honors, I would suggest to the court that although counsel cited Section 7.2 of the Illinois Antitrust Act, that counsel is ignoring the elephant in the room. I quote directly from the statute. The attorney general, quote, has the authority prior to the commencement of any civil or criminal action as provided for in the act to subpoena witnesses and pursuant to a subpoena, et cetera, to require production of documents. Now, the attorney general sued essentially the entire TFT LCD industry nearly two years ago now. We are emphatically not prior to an action. The attorney general has made no representation that an investigation is ongoing. Essentially, what we're talking about is obtaining discovery outside the four corners of discovery. We would suggest to the court that there is a profound question here about whether there is even a controversy right for resolution anymore. Two developments in the court since this order was entered. Number one, the underlying action has now been stayed twice, first in November and the stay was continued only about a week and a half ago, not awaiting this court's action, but rather awaiting the final result of the ongoing federal trials in San Francisco. And that stay was entered partially on comedy grounds. And the second development, before the stay was entered, the lower court, Judge Palmer entered a protective order which closely mimics the provisions of the federal protective order. But the important point is if the attorney general is able to get these documents pursuant to the subpoena rather than in ordinary discovery when the underlying action finally gets going, the attorney general will have gotten much of what they need outside the four corners of that protective order. Only the defendants will then be subject to it. He honors on the subject of comedy, which was an independent and adequate grounds for the order below, the attorney general goes so far as to say in their opening brief that there's actually only one issue here, possession, custody, or control. That the district court Judge Ilston's ruling on the motion for clarification somehow wiped out the entire issue of comedy. Well, the problem with that argument, Your Honor, is they brought that exact argument on the motion to reconsideration at the trial court in front of Justice Epstein, and they lost. Justice Epstein refused to revisit his order on those grounds. While the attorney general says nothing about why that may have been an abuse of discretion, they simply parrot the same argument. So our position is any challenge to comedy has been waived here. But even if that weren't so, the attorney general suggests that what Judge Ilston said was essentially she didn't care if these documents were produced here. That's not what she said at all. What she in fact said was that the course of action that we've taken, AUO America, was exactly what she expected, and that this was up to the Illinois courts to decide one way or the other. I quote, to the extent that any party wishes to challenge any aspect of a subpoena, including the question of whether the party has control of the relevant documents, Section 8 of the Stipulated Protective Order provides that the party shall do so in the issuing court, in other words, exactly what we've done here. She simply, the court simply said it was not going to get involved one way or the other. But the comedy issue remains highly relevant because of the provisions of Section 7.2 of the Illinois Antitrust Act. Whether or not this subpoena is ultimately enforced, under Section 7.2, if the attorney general gets these documents, the attorney general can share them with any state attorney general in the country. Now that's true under the Illinois Antitrust Act. It is not true under the protective order that's been issued in the lower court action. So that's a crucial change. And the concern with court supervision that Judge Ilston expressed in her order will be completely gone. Because then these documents won't be disseminated pursuant to the order of courts around the country, it'll entirely be in the hands of the Illinois attorney general. Isn't it the law and the policy, the public policy in Illinois that the attorney general, if they suspect criminal activity relative to the Antitrust Act, shouldn't they, they should investigate it? That's the law, right? That's the policy. That is the policy, although, Your Honor, this has never been a criminal action. This is a purely civil action. That's the policy of this jurisdiction. And comedy, am I right, tell me, should not apply if it would result in a violation of public policy or Illinois law? Your Honor, that argument might have more force if it were so that there were no other way for the attorney general to get these documents. The attorney general has sued every party involved, and the attorney general has the ability to seek those documents. That was the point I was about to make, to seek those documents directly from the people who own the documents. So the argument that this is the only way that some public policy will be frustrated if this route is blocked holds no water because the attorney general should be seeking them directly from the people who own the documents, not from a single party who happened years ago to be arguably located in Illinois. They have the option of what route they want to take as a movement here. They have that right, right? I would suggest, Your Honor, that the comedy interest out of deference to the federal court would dictate that they take the route of seeking those documents directly from the companies that own them rather than from us. So my response would be no. Under these circumstances, they don't have that right because of the federal protective order. Your Honors, on the subject of possession, custody, or control, briefly about the Whiten case matter. Your Honors, I was the lead appellate counsel for the companies in that matter, and there are two crucial distinctions that the attorney general is ignoring in arguing that that case has something to do with the possession, custody, or control. Number one, it was the subpoena of a federal criminal grand jury, and the public policy involved in a federal criminal investigation is certainly stronger than that involved in a state civil investigation. Number two, far more importantly, the subpoenas involved in the Whiten case matter were not directed to the companies. They were directed to the law firms, to Nossim and LLP, Whiten Case, LLP, and the Leif Cabreza firm in San Francisco. So Whiten Case has absolutely nothing to do with the issue of whether a UOA has possession or control of these documents. The attorney general essentially argues two standards here. The attorney general says, well, the standard should be whether the party has the legal right to obtain these documents on demand. I would urge the court to review again the protective order in this case, because I disagree with most of what the attorney general said about what the party is allowed to do. Your Honors, as part of the legal team, I signed a document with the federal court in San Francisco saying under penalty of perjury that I was subject to contempt if I didn't follow the provisions of the order. I'm not allowed to show any document that's marked highly confidential, even to my client, even if it's the basis of advice that I'm giving to the client. The findings of fact that Justice Epstein made below about the stringent restrictions on dissemination, we would suggest are far from being clearly erroneous. They're clearly correct. So even under the standard of legal right to obtain these documents on demand, we believe that the lower court's holding that AUOA has no possession or control is correct. The second line of cases that the attorney general relies on, as the lower court recognized, are essentially principal agent type attorney client cases that merely turn on the proposition  The attorney general cites cases about parties artfully directing their own documents to their lawyers. Essentially, you can't hide your own material in the files of your lawyers. Well, Your Honor, first of all, the protective order in federal court expressly breaks that relationship for purposes of this case. As I said, I'm not allowed to share these documents with my own client, so they can't direct me to share those documents. Otherwise, I'm held in contempt. And furthermore, none of the documents we're talking about belong to AUOA. So there is no issue here of artfully directing your own documents to hide something to the files of your lawyer. Final point, and I'll wrap up, Your Honor. The trial court quashed the subpoena as to all aspects of the subpoena. That, by definition, includes the attorney general's request for pleadings that were filed under seal below. And yet, in the attorney general's papers below, they raised no argument that was specific to those sealed pleadings, although we pointed out the omission. And they raised no argument here. We believe any challenge to that aspect of the order below has been waived. Your Honors, in our view, the time for this controversy has long since passed, now that we're in litigation below. The circuit court acted well within its discretion, and we would ask that the court affirm the order in all respects. Your Honors, this is a completely new argument that my opponent has just raised, that this is a controversy that's not ripe for resolution because of the subsequent procedures that have happened in the courts below. And I'd ask the court for leave to brief the question, if they, if Your Honors, are interested in pursuing the question that the case may be moot because of the ongoing litigation. It's our position that the case is not moot. If it is moot, that the public interest exception in the case involving the attorney general's subpoena power ought to give Your Honors the incentive to address the issue. And lastly, I believe Illinois law is clear that if the case becomes moot on appeal, that the lower court's judgment is usually set aside and vacated. I'd like to make all those points, if I may, in a written submission to the court. Thank you, Your Honor. Ten days to respond. With regard to the argument that we might share them with other law enforcement, again, that's an argument that I'm hearing for the first time here. If Judge Epstein had entered an order saying we were not able to share it with law enforcement, that would perhaps have made the issue ripe. But I don't think it is ripe for this court's review. The statute itself sets the terms of what the attorney general should do with regard to documents and sharing of those documents with law enforcement. And we have the right to share them, if that is correct, with other law enforcement agencies. But if that's their argument, then the subpoena should have issued with protective order with regard to that issue. It didn't. The judge simply said that there wasn't control and dismissed the attorney general's action. The White and Case decision is highly relevant because it explains that subpoena requests, and that would include our type of subpoena request under Section 8 of the protective order, are simply not governed by this agreement. When my opponent says that he could be held in contempt, he is correct if that way he thinks that agreement should be interpreted. But he's not interpreting that agreement correctly. That's why I argue that this case really is a case of requiring de novo review. Because what we're doing is we're looking at this federal protective order and reading it and seeing, does the other side have an obligation not to disclose? It's my position that they do not have that obligation and that they must disclose just as they disclosed to the Justice Department. It's my understanding also that with regard to non-objecting parties, the attorneys for AU America have in fact disclosed these documents. So they have control of these documents sufficient to disclose them if they're allowed to disclose them, is my point. And my argument is, again, that the protective order here doesn't provide for them to not disclose them. If there are no other questions, your honors, I'd ask that. The court made that finding, right? That finding of fact that they're not in possession of control. The lower court, if I may back up a bit, we had a rehearing motion where the trial court had ruled on comity grounds and on custody and control grounds that these documents were not disclosed. And we argued to the court, comity is wrong. And the judge said, put aside comity. Let's get to the meat of this. Let's talk about control. And that's included in the appendix to my brief where the court said that. He even put aside comity as a basis for his own ruling and then ruled that there wasn't custody and control. So that's why the issue is, again, it's good to be an appellee. They can bring that up if they want. But it's pretty clear that Judge Epstein wasn't basing his ultimate decision after the hearing on a comity issue. He was basing it on control. And control is a legal question. What does that mean? Control in Illinois under our statute. And then, of course, the interpretation of that protective order is also a legal question. Your honor should read section eight. It's three short paragraphs. It's very clear. When it comes to subpoenas, the protective order does not apply. We have to find out that finding a fact is against the math as way of the evidence. In order to overturn that, would you agree? No. I think the question of control is actually a legal question. And so, although whether a subpoena is enforced is typically a question that is raised on discretion. Sorry? It's kind of a mixed question of law and fact. Your honors, I think in the end, my argument's going to be the same, regardless of what standard it is. I think it is a legal question. It could be an application of law to fact. I don't see how it can be factual, since the question is, what is the meaning of the word control in a statute? What is the meaning of section eight of a protective order that's filed in federal court? Those seem like legal questions. But under any standard, it's my view that the trial court, in this case, committed legal error, and the case should be reversed. Judge Epstein did, though, say that he thought that the protective order entered by the federal court in California discouraged the production of any protected materials. He did say that. And I think the appellate court's decision, the Ninth Circuit's decision in the White and Case matter, puts that issue to bed. Because the Ninth Circuit, in a very short decision, maybe two pages at most, said that the per se rule in the Ninth Circuit is that protective orders fall when a party is faced with a lawfully issued subpoena. So any suggestion that that protective order was designed to discourage law enforcement subpoenas is wrong. And what exactly is the status of this case in California? Your Honors, I'm not exactly sure. I believe that the case was transferred into the federal court, was removed to federal court, and it's back in state court now. Is that correct, counsel? Your Honor, there are so many aspects of this case. I'd be glad to answer the question, but I don't understand which part we're talking about. Well, there was a question asked earlier about whether or not this is even a controversy that's right. And I was just trying to find out if we had any agreement on that. Your Honor, there are assorted actions by direct purchasers and several other state attorneys general, not including Illinois, that are scheduled for trial in California in November of this year. So the actions are ongoing. And presumably, the state attorney general in California has also subpoenaed some of these records. I believe the state attorney general in California has settled with some, if not all, of the defendants. Thank you. Thank you. We'd ask that the case be remanded to the circuit court for enforcement, Your Honor. Thank you. We'll let you know in the next couple of weeks. Well, we've given them 14 minutes. Yeah, so. Well, that's not necessarily contingent on, but we'll let you know in three weeks.